

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

## NO. 02-11-00140-CR

WILLIAM BRUCE TOLLESON                                      APPELLANT

V.

THE STATE OF TEXAS                                            STATE

----------

### FROM THE 355TH DISTRICT COURT OF HOOD COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### Introduction

Appellant William Bruce Tolleson appeals his convictions on two counts of assault, contending in a single issue that the evidence is legally and factually insufficient. We affirm.

----

[1]*See* Tex. R. App. P. 47.4.

## Standard of Review

The court of criminal appeals has held that there is no meaningful distinction between the legal sufficiency standard and the factual sufficiency standard. *Brooks v. State*, 323 S.W.3d 893, 895, 912 (Tex. Crim. App. 2010) (overruling *Clewis v. State*, 922 S.W.2d 126, 131–32 (Tex. Crim. App. 1996)). Thus, the *Jackson* standard, which is explained below, is the "only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Id.* at 912.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

## Factual and Procedural Background

A two-count indictment charged Appellant with committing assault against his live-in girlfriend, Anita Barrett. Count one alleged that he intentionally, knowingly, or recklessly impeded Anita's normal breathing or circulation by applying pressure to her throat or neck or by blocking her nose or mouth, and that Anita was a member of his household or a person with whom he had a dating relationship. Count two alleged that he intentionally, knowingly, or

2

recklessly caused bodily injury to Anita—a member of his household or a person with whom he had a dating relationship—by slapping her face, pushing her, and grabbing her neck and choking her. Each count in the indictment preceded enhancement paragraphs alleging Appellant had two previous convictions for assault family violence.

A jury found Appellant guilty as charged in both counts and assessed his punishment at twenty years' confinement with a $3,500 fine for count one, and ten years' confinement plus a $2,500 fine for count two. The trial court sentenced Appellant accordingly and ordered that the sentences run concurrently.

Section 22.01(a)(1) of the penal code provides that a person commits an offense if he intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse. Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). Subsection (b-1) applies to the first count in the indictment and elevates the offense to a second degree felony if the offense is committed against a person whose relationship or association with the defendant is described by sections 71.0021(b), 71.003, or 71.005 of the family code, the defendant has a previous conviction for assault family violence, and if the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the other person by applying pressure to that person's throat or neck or by blocking their nose or mouth. *Id.* § 22.01(b-1). Section 71.0021 of the family code describes a "dating relationship" as one

3

between individuals who have been or have had a continuing romantic or intimate relationship. Tex. Fam. Code Ann. § 71.0021(b) (West Supp. 2011). Section 71.005 describes a "household" as a unit composed of persons living together in the same dwelling without regard to whether they are related to each other. *Id*. § 71.005 (West 2008).[2]

Penal code section 22.01(b)(2) applies to the second count of the indictment and elevates the offense to a third-degree felony if the actor intentionally, knowingly, or recklessly caused bodily injury to a person described in the above cited sections of the family code. Tex. Penal Code Ann. § 22.01(b)(2) (West 2011).

The evidence at trial showed that in January 2010, Appellant and Anita Barrett were involved in a dating relationship and were living together in Granbury. Anita testified that she and Appellant were "boyfriend-girlfriend" and had been living together for eighteen months. On January 13, they were drinking as they prepared to move to a different home within their subdivision. At some point they decided to go to a local bar called TJ's, and there they continued drinking. Anita testified that they got into an argument at the bar and that she left, catching a ride from a woman driving by. After she was dropped off, she told a neighbor, Sharon McHenry, that she had caught a ride back from the bar. She then went into her home and went to sleep.

---

[2]Section 71.003 defines "family."

When Appellant came home, Anita awoke to him screaming and grabbing her by her shoulders and throat. Appellant squeezed Anita's throat, causing her to cough and nearly black out. She testified that during the attack, he slapped her, pushed her to the floor, pulled her by the hair, and grabbed her by the jaw. She managed to escape and run—clad only in a robe and socks—from her house to Sharon's.

On the way to Sharon's, Anita tripped on some flagstones and skinned her knees. When she got to Sharon's door, she pounded on it, waking Sharon, who ushered her inside and tried to find out what had happened. Anita was crying hysterically but managed to say, "He's trying to kill me." Sharon observed bruising and finger marks on Anita's neck, bruising on her chin and head, and an area where some of Anita's hair had been pulled out. Sharon called 911.

Hood County Sheriff's Corporal Lance McLean and Investigator Patrick Felan and Paramedic Katherine Jolly arrived sometime after 11:00 p.m. Corporal McLean entered Sharon's house and was led to a bedroom where he found Anita sitting on a bed, crying. He noticed abrasions on her knees, as well as red marks on her face and throat. Paramedic Jolly then examined Anita. She complained to Jolly of pain to her head, face, and back of her neck, which she said was caused from her being strangled, punched, and thrown against a wall and the floor. Jolly testified that her report indicated that Anita's face and neck were not discolored, but she added that since Anita had been crying, it would have been

5

hard to notice evidence of trauma due to the redness and puffiness caused by Anita's crying. Anita went by ambulance to Granbury Medical Center.

Officer McLean testified that after he spoke with Anita, he went to the home she shared with Appellant and found Appellant on a couch and wearing a gray sweatshirt that appeared to have blood on it. McLean described the house to be in a state of disarray, and the State had photographs the officer had taken at the house admitted in evidence. McLean also noticed a mattress on the floor of the house just inside the front door. Broken pieces of glass were on the mattress and the floor, cigarettes were strewn about the room, and a crushed piece of fruit lay on the floor. There was also a broken picture frame on the floor and a lamp tipped over on its side. McLean also testified that Appellant admitted that an argument between him and Anita at the house had become "physical."

At the hospital, emergency room physician Dr. Don Davis treated Anita. He recorded that she had injuries to her lower extremities, as well as an area of discomfort in the front of the chest wall along with tenderness near the back of the neck. At trial, Dr. Davis acknowledged that photographs of Anita's injuries taken at the hospital showed redness on her chin and an area of discoloration on her chest. Anita was discharged the next morning, went to Sharon's house to collect some of her things, and then left for her parents' house.

## Discussion

In a single issue, Appellant argues that there is "significant reasonable doubt about the factual sufficiency of the evidence in this case" due to

6

misstatements and evidentiary inconsistencies. This argument invites us to assess the credibility of alleged misstatements and to weigh evidence that may or may not be inconsistent with other evidence. Under the applicable standard of review, however, we can do neither.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). When performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Isassi*, 330 S.W.3d at 638.

Based on our review of the record under the appropriate standard of review, we hold that a rational jury could have reasonably concluded beyond a reasonable doubt that Appellant committed each offense as alleged in the indictment. Therefore, we hold that the evidence is sufficient to support his convictions. Accordingly, we overrule Appellant's sole issue.

## Conclusion

Having overruled Appellant's sole issue, we affirm the judgment of the trial court.

LEE GABRIEL
JUSTICE

PANEL:  GARDNER, McCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  February 23, 2012